## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)   CASE NO. 19-MJ-0048<br>KRZYSZTOF STUGLIK,  )<br>)<br>Defendant.  )<br>) | |

### OPPOSITION TO MOTION TO DETAIN DEFENDANT PENDING TRIAL

NOW COMES, defendant, Krzysztof Stuglik, by and through undersigned counsel, Michael Rogers of the Office of the Federal Public Defender, and hereby respectfully requests this Honorable Court to order his immediate release from custody pursuant to the Bail Reform Act and the Fifth Amendment's Due Process Clause. Supreme Court precedent makes it unconstitutional for a court to hold a detention hearing or detain a defendant at all when, as here, there is no basis for detention under 18 U.S.C. § 3142(f). As all six courts of appeals to have directly addressed the question have recognized, the only permissible bases for detaining a defendant are the enumerated factors set out in 18 U.S.C. § 3142(f). Under 3142(f), ordinary risk of flight is not a permissible basis for detention; rather, the statute only authorizes detention if there is a "*serious risk* that [the defendant] will flee." § 3142(f)(2)(A) (emphasis added). In this case, the government has not presented sufficient evidence that Stuglik poses a serious risk of flight.

Accordingly, Stuglik must be released on bond immediately with appropriate conditions of release. See 18 U.S.C. §§ 3142(a)–(c). In support of this motion, Stuglik states as follows:

1

I.  **The Bond Statute Only Authorizes Pretrial Detention and a Detention Hearing When One of the Seven Factors Listed in § 3142(f) Is Met.**

Mr. Stuglik is being detained in violation of the law because none of the seven § 3142(f) factors are met.[1] Supreme Court precedent and the plain language of the statute prohibit the court from holding a detention hearing and detaining a defendant for even one day when no § 3142(f) factor is present. Six courts of appeals as well as district courts in this circuit concur.

A.  **Supreme Court Law**

In *United States v. Salerno*, 481 U.S. 739, 755 (1987), the Supreme Court upheld the Bail Reform Act, 18 U.S.C. § 3142, over a Fifth Amendment substantive Due Process challenge in part on the grounds that detention hearings could be held *only* under the limited circumstances set out in § 3142(f). As the *Salerno* Court held: "[t]he Bail Reform Act *carefully limits the circumstances under which detention may be sought* to the most serious crimes. *See* 18 U.S.C. § 3142(f) (*detention hearings available if* case involves crime of violence, offenses for which the sentence is life imprisonment or death, serious drug offenders, or certain repeat offenders)." *Salerno*, 481 U.S. at 747 (emphasis added). The Supreme Court thus held that the factors listed in § 3142(f) serve as a gatekeeper. Only certain categories of defendants are eligible for detention at all, and the government is definitively prohibited from seeking detention if no (f) factor is met. Likewise, *Salerno* makes clear that when no § 3142(f) factor is present, a court is prohibited from holding a detention hearing and is required to release the defendant on conditions.

The constitutionality of the Bail Reform Act depends on this gatekeeping function of

---

[1] This case does not meet any of the five factors discussed in § 3142(f)(1), as it does not involve: (1) a crime of violence under (f)(1)(A); (2) an offense for which the maximum sentence is life imprisonment or death under (f)(1)(B); (3) a qualifying drug offense under (f)(1)(C); (4) a felony after conviction for two or more offenses under the very rare circumstances described in (f)(1)(D); or (5) a felony involving a minor victim or the possession/use of a firearm under (f)(1)(E).
  The government has also not presented any evidence to establish that this case meets either of the two additional factors discussed in § 3142(f)(2): (1) a "serious risk that [the defendant] will flee" under (f)(2)(A); or (2) a "serious risk" that the defendant will engage in obstruction or juror/witness tampering under (f)(2)(B).

2

§ 3142(f). If courts detain defendants without regard to the limitations in § 3142(f), the Act as applied becomes unconstitutional. In holding that the Act did not violate substantive Due Process, the *Salerno* Court focused on the fact that § 3142(f) "carefully limits the circumstances under which detention may be sought." *Id.* at 747. It was these limitations in 3142(f), and several other aspects of the Act, that led the Court to conclude that the Act was "regulatory in nature, and does not constitute punishment before trial in violation of the Due Process Clause." *Id.* at 748. The *Salerno* Court further relied on the limitations in § 3142(f) in another component of its substantive Due Process ruling, its conclusion that "the government's interest in preventing crime by arrestees is both legitimate and compelling." To reach this conclusion, the Court contrasted the Bail Reform Act with a statute that "permitted pretrial detention of any juvenile arrested on any charge" by pointing to the gatekeeping function of § 3142(f): "The Bail Reform act, in contrast, narrowly focuses on a particularly acute problem in which the Government interests are overwhelming. The Act operates ***only*** *on individuals who have been arrested for a*

*specific category of extremely serious offenses. 18 U.S.C. § 3142(f).*" *Id.* at 750 (emphasis added). The Court emphasized that Congress "specifically found that these individuals" arrested for offenses enumerated in § 3142(f) "are far more likely to be responsible for dangerous acts in the community after arrest." *Id.* In fact, throughout its substantive Due Process ruling, the Court continued to emphasize that the only defendants for whom the government can seek detention are those who are "already indicted or held to answer for a *serious* crime," meaning the "extremely serious offenses" listed in § 3142(f). *Id.* (emphasis added).

    B.  **Circuit and District Court Case Law**

Following the Supreme Court's guidance in *Salerno*, six courts of appeals agree that it is illegal to detain a defendant—or even to hold a detention hearing—unless the government establishes one of the factors listed in 18 U.S.C. § 3142(f). *See, e.g.*, *United States v. Ploof*, 851

3

F.2d 7, 11 (1st Cir. 1988); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988); *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992); *United States v. Twine,* 344 F.3d 987 (9th Cir. 2003); *United States v. Singleton,* 182 F.3d 7, 9 (D.C. Cir. 1999).

When the government requests detention at an initial appearance hearing, the judge must first determine whether there is a permissible statutory basis for detention under § 3142(f). *See Friedman*, 837 F.2d at 48 ("A motion seeking such detention is permitted only when the charge is for certain enumerated crimes . . . or when there is a serious risk that the defendant will flee, or obstruct or attempt to obstruct justice.") (citing 18 U.S.C. § 3142(f)(1)–(2)); *Byrd*, 969 F.2d at 109 ("A hearing can be held only if one of the . . . circumstances listed in (f)(1) and (f)(2) is present."). Unless the statutory threshold set out in § 3142(f) is met, "detention is not an option." *Singleton*, 182 F.3d at 9; *Byrd*, 969 F.2d at 109 ("Detention can be ordered, therefore, only in a case that involves one of the . . . circumstances listed in (f).").

Unfortunately, a cultural norm has developed that contravenes the Bail Reform Act and *Salerno* and results in defendants being detained in violation of the statute and their constitutional rights. Specifically, at virtually every initial appearance hearing where the government is requesting detention, the Assistant United States Attorney asserts that the defendant is either "a danger to the community," "a risk of flight," or both.

However, neither "danger to the community" nor ordinary "risk of flight" is a factor listed in § 3142(f). Accordingly, it is flatly illegal to detain a defendant on either of these grounds at the initial appearance. And yet, every day, defendants are detained on these bases. The practice in this district must be in line with the Bail Reform Act. That will only happen if this Court and other judges in this district demand that the government provide a legitimate § 3142(f) basis for every detention request.

## II.  It is Illegal to Detain Krzysztof Stuglik At All Because the Government Has Not Presented Evidence that He Poses a "Serious Risk" of Flight.

It is improper to detain Stuglik on the government's bare allegation that he poses a "risk of flight" for three reasons. First, the plain language of the statute only authorizes a judge to detain a defendant pending a detention hearing when the defendant poses a "*serious* risk" of flight, § 3142(f)(2)(A), and in this case the government merely alleged circumstances that provide for *ordinary* risk of flight. Second, the government bears the burden of presenting *evidence* to substantiate its allegation that a defendant is a serious risk of flight, and here the government has provided no such evidence. Third, to establish "serious risk" of flight the government bears the burden of demonstrating that the defendant presents an "extreme and unusual" risk of willfully fleeing the jurisdiction if released, and the government has not met that burden here. Because the government has not met its burden in this case, it is improper to detain Mr. Stuglik for the duration of the case.

### A.  It is Improper to Detain Stuglik Because the Government Has Provided No Evidence to Support its Claim that Stuglik is a Serious Risk of Flight.

Where the government's only legitimate § 3142(f) ground for detention is "serious risk" of flight, the government bears the burden of presenting some *evidence* to support its allegation that a defendant poses a "serious risk" of flight rather than the ordinary risk attendant in any criminal case. "When . . . the safety of the community is not at issue, a court must first determine whether the government has shown, by a preponderance of the evidence, the existence of a *serious risk* that the defendant will flee." *United States v. Marinez-Patino*, 2011 WL 902466, at *3 (N.D. Ill. Mar. 14, 2011) (emphasis added).

The government is not entitled detain a defendant by merely certifying in good faith that the case involves a risk—or even a serious risk—that the defendant will flee. Instead, the government must also make some *evidentiary showing* to substantiate its allegation that the defendant poses a "serious risk" of flight. This interpretation is derived from the plain text of the

5

statute. Section 3142(f)(2)(A) authorizes a detention hearing "*in a case that involves*" a "serious risk" that the person will flee (emphasis added). This statutory language contemplates a judicial finding about whether the case in fact involves such a risk. Had Congress intended to authorize detention based on a mere certification by the government, Congress could have enacted such a regime, just as they have done in other contexts. *See, e.g.*, 18 U.S.C. § 5032 (creating exception to general rule regarding delinquency proceedings if "the Attorney General, after investigation, certifies to the appropriate district court of the United States" the existence of certain circumstances); 18 U.S.C. § 3731 (authorizing interlocutory appeals by the government "if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding"). But the language of the Bail Reform Act says nothing about the government certifying that a serious risk of flight exists. Instead, authorization for detention turns on whether the judge makes a finding that the case actually "involves" a "serious risk." In our adversarial system, such disputed questions must be determined by a judicial officer unless the statute allows otherwise, and the government must provide an evidentiary basis to enable the judicial officer to make an informed decision.

> **B. The Legislative History of the Bail Reform Act Makes Clear That Detaining a Defendant as a "Serious Risk of Flight" is Appropriate Only in "Extreme and Unusual Circumstances."**

While § 3142(f)(2) does not spell out the standard of proof for "serious risk" of flight, the legislative history of the Bail Reform Act unequivocally demonstrates that Congress intended "serious risk of flight" to be a very demanding standard, and expected courts to detain on that ground only in "extreme and unusual circumstances." The Senate and the House Judiciary Committee reports concur that:

> Under subsection [3142]f(2), a pretrial detention hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. The first two types of cases, those involving either a serious risk that the defendant will flee, or a serious risk that the defendant will obstruct justice, or threaten, injure, or

6

> intimidate a prospective juror or witness, or attempt to do so, *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.

Bail Reform Act of 1983: Report of the Committee on the Judiciary, S Rep No 98-147, 98th Cong, 1st Sess. 48 (1983) (emphasis added). The footnote accompanying this text points to *United States v. Abrahams*, 575 F.2d 3 (1st Cir. 1978), as representing the "scope of the current case law." In *Abrahams*, the First Circuit held that only a "rare case of extreme and unusual circumstances . . . justifies pretrial detention" on the ground of risk of flight. *Id.* at 8 (emphasis added); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case.").

Applying this rule to the defendant in *Abrahams*, the court emphasized just how demanding a standard "extreme and unusual circumstances" is. The defendant in *Abrahams* posed an almost preposterously high risk of fleeing the jurisdiction. He was an escaped state prisoner from New Jersey, and a fugitive from state court in California where he had jumped bail after giving a false last name. 575 F.2d at 4. He was a serial impersonator with multiple known aliases, and three previous convictions in state and federal court. *Id*. At his original bail hearing in this case he had given a false name and lied about his criminal history, had originally failed to appear, and to top it all off, had recently transferred 1.5 million dollars to Bermuda. *Id.* Under these extreme facts the court *deliberated* before finally holding that "[t]his is the rare case of extreme and unusual circumstances that justifies pretrial detention without bail."

By incorporating the *Abrahams* standard into "serious risk of flight," Congress painted a clear picture of the kind of extreme factual circumstances required to even merit a detention hearing on the ground of serious risk of flight under § 3142(f)(2). To interpret "serious risk of flight" as an ambiguous, undemanding catchall term, or to conflate it with "risk of non-

7

appearance" is to deliberately ignore Congress' intended limitations.

Moreover, some amorphous risk of local nonappearance does not rise to the level of a *serious* risk of flight. "[T]o conflate risk of flight and assuring appearance would have the effect of reading out of the BRA the threshold showing that there is a serious risk that the defendant will flee." *Marinez-Patino*, 2011 WL 902466, at *5 (holding that defendant facing deportation was not a serious flight risk under § 3142(f)(2)(A)). In order "to show that there is a serious risk that a defendant will flee, the government must show that the defendant would seek to leave [the jurisdiction] through some type of voluntary act." *Marinez-Patino*, 2011 WL 902466, at *12 (citations omitted). The only defendants who qualify for detention under 3142(f)(2) are those "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process. *See, e.g.,* Lauryn Gouldyn, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 724 (2017).[2]

### III. In This Case, the Government Has Not Presented "Extreme and Unusual Circumstances" and Has Not Met Its Burden of Proving That Stuglik Presents a "Serious Risk" Of Fleeing the Jurisdiction Under §3142(f)(2)(A).

Stuglik must be released immediately on conditions because the government did not argue that Stuglik posed a "serious risk" of flight and did not present any evidence whatsoever to establish that "there is a serious risk that the [defendant] will flee" the jurisdiction under § 3142(f)(2)(A). Although the defense bears no burden of proof, it is clear from Stuglik's history and characteristics, as outlined during the August 29, 2019 hearing, that he does not pose a serious risk of flight.

Because Stuglik does not present a "serious risk" of flight, neither § 3142(f)(1) nor § 3142(f)(2) is satisfied and he cannot be detained under the law.

---

[2] This rule is sound policy, as the risk of a defendant becoming either a "local absconder" (who intentionally fails to appear but remains in the jurisdiction), or a "low-cost non-appearance" (who unintentionally fails to appear), can be addressed by imposing conditions of release like electronic monitoring, GPS monitoring, and support from pretrial services. *See* Gouldyn, 85 U. Chi. L. Rev. at 724.

### IV. There Is No Other Basis to Detain Stuglik as a Serious Risk of Flight in this Case.

Mr. Stuglik is charged with a minor offense. The potential penalty for speculative and uncharged conduct in this case is not a legitimate basis for finding a serious risk of flight. There is no evidence Congress intended courts to de facto detain any client facing a potentially long prison sentence for uncharged conduct. Indeed, many federal defendants face long sentences—being a defendant in a run-of-the-mill illegal entry case cannot possibly be an "extreme and unusual circumstance." Even at the detention hearing, where the standard for finding risk of flight is lower, Congress did not authorize courts to evaluate potential penalty when considering risk of flight. *See* § 3142(g) (listing as relevant factors the nature and seriousness of the charge, (2) the weight of the evidence against the defendant, and (3) the history and characteristics of the defendant); *Friedman*, 837 F.2d at 50 (in "cases concerning risk of flight, we have required *more* than evidence of the commission of a serious crime and the fact of a potentially long sentence to support finding risk of flight") (emphasis added).

### V. Detaining Stuglik as a Serious Risk of Flight Is Not Only Legally Unsupported, but Is Also Harmful and Unnecessary.

#### A. A Few Days of Detention Can Have Disastrous Consequences on a Defendant's Life.

Congress was correct to cabin pretrial detention to "extreme and unusual circumstances," because even very short periods of detention have been shown to seriously harm defendants. For example, according to a recent study published by the Administrative Office of the U.S. Courts, 37.9% of federal defendants detained fewer than three days reported have a negative outcome at work (such as losing their job). Alexander M. Holsinger & Kristi Holsinger, *Analyzing Bond Supervision Survey Data: The Effects of Pretrial Detention on Self-Reported Outcomes*, 82(2)

Federal Probation 39, 42 (2018), archived at https://perma.cc/LQ2M-PL83. Likewise, 29.9% of people detained fewer than three days reported that their housing became less stable. *Id*. In other words, a substantial minority of people held for only one or two days in federal cases still lose their jobs or their housing as a result of the brief detention.

      The first few days of detention can also be dangerous. According to the Bureau of Justice Statistics, between 38% and 45% of all jailhouse rapes perpetrated on a male victim happen within three days of admission. Allen J. Beck, et al., *Sexual Victimization in Prisons and Jails Reported by Inmates, 2008–09*, Bureau of Justice Statistics (2010), 22–23, archived at https://perma.cc/H33S-QFPK. Over 40% of people who die in jail die within their first week. Margaret Noonan, et al., *Mortality in Local Jails and State Prisons, 2000–14—Statistical Tables*, Bureau of Justice Statistics 8 (2015), archived at https://perma.cc/B9CN-ST3K. Despite the trauma and danger inherent in the first few days of a jail stay, jails' physical and mental health screening and treatment is often inadequate. *See* Laura M. Maruschak, et al., *Medical Problems of State and Federal Prisoners and Jail Inmates*, Bureau of Justice Statistics 9, 10 (2014), archived at https://perma.cc/HGT9-7WLL (comparing healthcare in prisons and jails); *see also* Faye S. Taxman, et al., *Drug Treatment Services for Adult Offenders: The State of the State*, 32 Journal of Substance Abuse Treatment 239, 247–49 (2007), archived at https://perma.cc/G55Z-4KQH. In sum, detaining Stuglik for even one or two days in this case is not just illegal—it could also jeopardize his physical, financial, and mental wellbeing.

    **B.  Many Conditions of Release Have Been Proven to Effectively Manage Ordinary Risk of Flight or Nonappearance.**

      Any concerns the Court may have about local nonappearance can be allayed by imposing any number of conditions of release that empirically have been shown to reduce the risk of local nonappearance. For example, a study conducted in New York state courts found that text message reminders were able to reduce failures to appear by up to 26 percent, translating to 3,700 fewer

10

arrest warrants per year. *See* Brice Cooke et al, *Text Message Reminders Decreased Failure to Appear in Court in New York City*, Abdul Latif Poverty Action Lab (2017), archived at https://perma.cc/JCW7-JVZW. Holistic pre-trial services focused on providing social services and *support* to clients also reduce the risk of non-appearance across all risk levels in state systems. *See generally* Christopher Lowenkamp and Marie VanNostrand, *Exploring the Impact of Supervision on Pretrial Outcomes*, John and Laura Arnold Foundation, Special Report (2013), archived at https://perma.cc/R3F3-KZ76. Beyond the traditional role of Pretrial Services, this could include providing funding for transportation to court, providing childcare on court dates, and assisting clients in finding stable housing, employment or education. *See generally* John Clark, *The Role of Traditional Pretrial Diversion in the Age of Specialty Treatment Courts: Expanding the Range of Problem-Solving Options at the Pretrial Stage*, Pretrial Justice Institute (2014), archived at https://perma.cc/5C8C-7HJK.

Moreover, scholars and courts agree that electronic monitoring is especially effective at reducing risk of flight. *See, e.g.*, Samuel R. Wiseman, *Pretrial Detention and the Right to the Monitored*, 123 Yale L. J. 1344, 1347–48 (2014) ("Increasingly sophisticated remote monitoring devices have the potential to sharply reduce the need for flight-based pretrial detention . . . . [T]he question of finding other ways of ensuring a non-dangerous defendant's presence at trial is one not of ability, but of will."); *id.* at 1368–74 (citing studies in both European and American contexts to demonstrate that electronic monitoring is at least as effective as secured bonds at deterring flight, and that it comes at far reduced cost to both the defendant and the government); *United States v. O'Brien*, 895 F2d 810, 814-16 (1st Cir 1990) (describing reduction in flight rate from monitoring program and concluding that "evidence concerning the effectiveness of the bracelet alone arguably rebuts the presumption of flight").

11

**VI. Stuglik Requests Immediate Release with Conditions**

Because there is no basis to detain Stuglik, he should be released immediately under strict conditions that include: location monitoring and **daily** check-in requirements with the Department of Probation until long term accommodations are arranged. These conditions will "reasonably assure" Stuglik's appearance and the safety of the community. § 3142(c).

VI. **Conclusion**

For these reasons, Stuglik respectfully requests that he be released with conditions this Court deems appropriate, under §§ 3142(a)–(c). Because the government has provided no permissible basis for pretrial detention under § 3142(f), continuing to detain Stuglik violates the law.

DATED: August 30, 2019          Respectfully submitted,

RICHARD COUGHLIN
INTERIM FEDERAL PUBLIC DEFENDER

/s/ Michael A. Rogers, Esq.
MICHAEL A. ROGERS, ESQ.
ASSISTANT FEDERAL PUBLIC DEFENDER
4094 Estate Diamond Ruby, Ste 5
St. Croix, VI 00820
E-mail: Michael_Rogers@fd.org
Tel: (340) 773-3585
Fax: (340) 773-3742

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on the 30th day of August, 2019, I electronically filed the foregoing Notice of Appearance with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

GRETCHEN C.F. SHAPPERT  
United States Attorney

Alphonso Andrews, Esq.  
Rhonda Williams-Henry, Esq.  
Assistant United States Attorney  
1108 King Street, Suite 201  
Christiansted, VI 00820  
Tel. (340)773-1108  
Fax: (340)773-1407  
Email: Rhonda.Williams-Henry@usdoj.gov  
       Alphonso.Andrews@usdoj.gov

                                                       /s/     Michael A. Rogers, Esq.  
                                                               Michael A. Rogers, Esq.